Approved: _____
BENJAMIN WOODSIDE SCHRIER
Assistant United States Attorney

**20M9068**

Before:  HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA            :  COMPLAINT
                                    :
         - v. -                     :  Violation of
                                    :  21 U.S.C. § 846
WELYNTON GARCÍA DE LA CRUZ, and     :
ABRAHAM CANO,                       :  COUNTIES OF OFFENSE:
                                    :  BRONX & WESTCHESTER
         Defendants.                :
                                    :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

ROBERT BROWN, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

**COUNT ONE**
(Narcotics Conspiracy)

1. From at least in or about May 2019 up to and including on or about August 24, 2020, in the Southern District of New York and elsewhere, WELYNTON GARCÍA DE LA CRUZ and ABRAHAM CANO, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that WELYNTON GARCÍA DE LA CRUZ and ABRAHAM CANO, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that WELYNTON GARCÍA DE LA CRUZ and ABRAHAM CANO, the defendants, and others known and unknown, conspired to distribute and possess with intent to

distribute was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Postal Inspector with the USPIS. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

5. As set forth in more detail below, law enforcement has been investigating a drug trafficking organization (the "DTO") that uses the United States Postal Service ("USPS") to ship parcels containing dozens of kilograms of cocaine from Puerto Rico to addresses in the Bronx and Westchester County. As part of the investigation, law enforcement has seized approximately nine parcels shipped by the DTO that were then searched and found to each contain approximately one kilogram of cocaine. Law enforcement has also identified approximately 45 additional parcels shipped by the DTO that are suspected of each containing approximately one kilogram of cocaine. Using a variety of investigative techniques discussed below, including Internet Protocol ("IP") address tracking, cellphone location data, and surveillance, law enforcement has further identified WELYNTON GARCÍA DE LA CRUZ and ABRAHAM CANO, the defendants, as two associates of the DTO who have been involved in the tracking and receipt of the DTO's parcels in New York. On or about August 24, 2020, law enforcement arrested GARCÍA and CANO after they picked up one of the DTO's parcels that was found to contain approximately one kilogram of cocaine.

**The DTO's Parcels**

    6.    Based on my participation in this investigation, including my conversations with other law enforcement officers and others, my review of law enforcement reports and records, and my training and experience, I have learned the following, in substance and in part:

    a.    Between in or about January 2020 and in or about July 2020, law enforcement obtained warrants for the search and seizure of approximately nine USPS parcels (the "Seized Parcels") suspected of having been sent by the DTO from Puerto Rico to the Bronx or Westchester County. The Seized Parcels each contained approximately one kilogram of a white, powdery substance that tested positive for cocaine.[1]

    b.    Since in or about January 2020, law enforcement has identified more than approximately 45 additional parcels (the "Additional Parcels") believed to have been sent by the DTO from Puerto Rico to the Bronx or Westchester County between in or about May 2019 and in or about August 2020. Based in part on the weight of the Additional Parcels, I believe that each of the Additional Parcels contained approximately one kilogram of cocaine. Law enforcement was able to identify the Additional Parcels because they shared certain characteristics with the Seized Parcels, including the addresses of the senders and recipients and the weight of the parcels. For example:

    i.    Between on or about May 8, 2019 and on or about January 9, 2020, approximately 13 parcels (the "White Plains Road Parcels") were sent from Puerto Rico to a particular address on White Plains Road in the Bronx (the "White Plains Road Address"). Each of the White Plains Road Parcels weighed between approximately 5.44 and 5.81 pounds.

    ii.    On or about January 22, 2020, law enforcement obtained a warrant for the search and seizure of the thirteenth of the White Plains Road Parcels (the "Thirteenth Parcel"). The Thirteenth Parcel was found to contain

---

[1] In or about April 2020, law enforcement also obtained a warrant for the search and seizure of a USPS parcel suspected of having been sent by the DTO from the Bronx to Puerto Rico. That parcel contained a quantity of a substance that tested positive for the pain-relieving drug phenacetin. Based on my training and experience, I have learned that individuals engaged in narcotics trafficking often use phenacetin to dilute or "cut" other narcotics.

approximately one kilogram of a white, powdery substance that tested positive for cocaine.  After the seizure of the Thirteenth Parcel, no additional parcels within the approximate weight range of the White Plains Road Parcels were sent from Puerto Rico to the White Plains Road Address.  Based on my participation in this investigation, and my training and experience, I believe the foregoing shows that the DTO stopped using the White Plains Road Address as a delivery address for cocaine shipments after the seizure of the Thirteenth Parcel because the DTO became concerned about possible law enforcement surveillance.

**The Defendants' Tracking and Receipt of the DTO's Parcels**

7.  Based on my participation in this investigation, including my conversations with other law enforcement officers and others, my review of law enforcement reports and records, subpoena returns, and cellphone location data, my participation in surveillance, and my training and experience, I have learned the following, in substance and in part:

a.  One of the ways in which law enforcement identified WELYNTON GARCÍA DE LA CRUZ, the defendant, as an associate of the DTO was through the tracking of IP address information.  USPS provides a service on its website (the "Website") that allows a customer to track a parcel using the tracking number that was assigned to it when it was shipped.  If the customer inputs the tracking number on the Website, the Website informs the customer of the status of the parcel, e.g., the parcel's approximate location, whether it is out for delivery, whether it has been delivered, etc.  Each time a customer uses the Website to track a parcel, the Website logs the IP address the customer used to access the Website.

b.  Between in or about May 2019 and in or about August 2020, a particular IP address (the "García IP Address"), later determined to be associated with GARCIA, was used to access the Website and track all nine of the Seized Parcels, as well as at least approximately 35 of the Additional Parcels.  Based on subpoena returns from the internet service provider, the García IP Address is associated with a particular address on Rosedale Avenue in the Bronx (the "Rosedale Avenue Address"), which is in turn associated with GARCÍA.  Specifically, on numerous occasions between in or about March 2020 and in or about August 2020, law enforcement observed GARCÍA at the Rosedale Avenue Address, including in the evening.  Additionally, in or about August 2020, law enforcement observed

4

GARCÍA frequently driving a white Acura that is registered to GARCÍA at the Rosedale Avenue Address.[2]

        c.    Law enforcement has also determined that GARCÍA has tracked some of the DTO's parcels through cellphone location information and surveillance regarding a particular parcel.  In particular:

        i.    On or about June 15, 2020, one of the Seized Parcels (the "June 15 Parcel") was mailed from Puerto Rico to the Bronx.  When mailing the June 15 Parcel, the sender provided the call number assigned to a particular cellphone ("Cellphone-1"), which is used by GARCÍA, as described below.  On or about June 16, 2020, law enforcement intercepted the June 15 Parcel at a USPS facility in Manhattan, and a subsequent search of the parcel pursuant to a warrant revealed that it contained approximately one kilogram of a white, powdery substance that tested positive for cocaine.

        ii.    On or about June 17, 2020, an individual used Cellphone-1 to call the USPS regarding the June 15 Parcel.  In sum and substance, the individual stated that he was the sender of the June 15 Parcel, and inquired about its status. On or about June 24, 2020, Magistrate Judge Gabriel W. Gorenstein signed a warrant for prospective location and pen register information for Cellphone-1.  Shortly thereafter, law enforcement began receiving prospective location information, or "pings," from the service provider for Cellphone-1.

        iii.    In part based on location information, law enforcement was able to determine that Cellphone-1 was often located at or around a particular commercial address in the Bronx (the "Commercial Address").  On or about July 1, 2020, law enforcement observed GARCÍA standing outside the Commercial Address at or around the same time that Cellphone-1 was pinging in the vicinity of the Commercial Address.  Law enforcement then called Cellphone-1 from a blocked call number.  Moments later, GARCÍA brought his cellphone up to his ear.  In sum and substance, the individual who answered the call from law enforcement said "hello" several times before law enforcement

---

[2] Based on surveillance, law enforcement believes that only one other adult ("Adult-1") lives at the Rosedale Avenue Address with GARCÍA, and that Adult-1 is GARCIA's wife.  Based on all of the other evidence in this case, including the evidence described in this Complaint, law enforcement believes that GARCÍA, not his wife, used the García IP Address to access the Website and track the Seized Parcels and the Additional Parcels.

5

hung up.  At or around the same time that law enforcement hung up, GARCÍA took his cellphone away from his ear.  Based on my participation in this investigation, and my training and experience, I believe the foregoing shows that GARCÍA was the user of Cellphone-1, and that GARCÍA used Cellphone-1 to call USPS regarding the status of the June 15 Parcel.

   d.   During the course of this investigation, law enforcement was able to identify some of the Additional Parcels before they were delivered, and to conduct surveillance on the individuals involved in picking up those parcels after their delivery.  Law enforcement observed both GARCÍA and ABRAHAM CANO, the defendant, pick up certain of the Additional Parcels on multiple occasions.  For example:

      i.   On or about January 30, 2020, June 10, 2020, and June 30, 2020, law enforcement observed GARCÍA pick up one of the Additional Parcels on each date at addresses in the Bronx and Westchester.

      ii.   On or about July 3, 2020 and July 8, 2020, law enforcement observed CANO pick up one of the Additional Parcels on each date at addresses in Westchester County.

## The Arrest of the Defendants

   8.   Based on my participation in this investigation, including my conversations with other law enforcement officers and others, my review of law enforcement reports and records, my participation in surveillance, and my training and experience, I have learned the following, in substance and in part:

   a.   As part of this investigation, law enforcement identified a parcel (the "August 19 Parcel") that was shipped on or about August 19, 2020, from Puerto Rico to a particular address in Yonkers (the "Yonkers Address").  Law enforcement suspected that the August 19 Parcel was shipped by the DTO, and contained approximately one kilogram of cocaine, because at least approximately four of the Additional Parcels had been delivered to the Yonkers Address previously, and the García IP Address was used to access the Website and track the August 19 Parcel.

   b.   On or about August 24, 2020, at approximately 11:00 a.m., the Website reflected that the August 19 Parcel had been delivered to the Yonkers Address.  At or around the same time, law enforcement began surveilling the Yonkers Address.  At

6

approximately 12:00 p.m., WELYNTON GARCÍA DE LA CRUZ, the defendant, and an unidentified male ("UM-1") arrived in the vicinity of the Yonkers Address in a silver Ford Explorer (the "Explorer"). GARCÍA was driving, and UM-1 was in the front passenger seat.  The Explorer circled the block, and eventually parked approximately one-and-a-half blocks away from the Yonkers Address.

       c.   At approximately 1:00 p.m., ABRAHAM CANO, the defendant, and an unidentified female ("UF-1") arrived in the vicinity of the Yonkers Address in a black Mercedes Benz (the "Mercedes").  CANO was driving, and UF-1 was in the front passenger seat.  The Mercedes parked in front of the Yonkers Address.  Approximately several minutes later, CANO and UF-1 exited the Mercedes and entered the Yonkers Address.  Approximately 20 minutes after that, CANO exited the Yonkers Address alone, carrying a parcel that was later identified as the August 19 Parcel, and got back into the Mercedes.  The Mercedes pulled out and started traveling away from the Yonkers Address.  Moments later, the Explorer also pulled out and started traveling in the same direction as the Mercedes, approximately several car-lengths behind.

       d.   Shortly thereafter, law enforcement pulled over the Mercedes and the Explorer and arrested CANO and GARCÍA.  At or around the time of his arrest, and not in response to any question from law enforcement, CANO stated, in sum and substance, that there was a kilogram of cocaine in the Mercedes.  Law enforcement subsequently recovered the August 19 Parcel from the back seat of the Mercedes.  A search of the August 19 Parcel revealed that it contained approximately one kilogram of a white, powdery substance that tested positive for cocaine.

       e.   Following his arrest, CANO was transported to a law enforcement facility in Manhattan.  CANO was provided with a Miranda warning, waived his Miranda rights, and agreed to be interviewed by law enforcement.  During his interview, CANO stated, in sum and substance, that he knew the August 19 Parcel contained cocaine, but that he did not know the quantity; that GARCÍA had called him earlier that day and told him to pick up the August 19 Parcel from the Yonkers Address, and that he would be paid $500 to do so; that, before he was arrested, he had been planning to transfer the August 19 Parcel to GARCÍA shortly after leaving the Yonkers Address; and that this was his first time picking up a parcel for GARCÍA.

       f.   As part of the booking process following the arrest of GARCÍA, law enforcement obtained from GARCÍA his New

7

York State driver's license (the "García License").  The García License was issued in or about June 2019, and lists a particular address on Warburton Avenue in Yonkers (the "Warburton Avenue Address").  Between in or about January 2020 and in or about February 2020, at least approximately two of the Additional Parcels were delivered to the Warburton Avenue Address.

    WHEREFORE, I respectfully request that WELYNTON GARCÍA DE LA CRUZ and ABRAHAM CANO, the defendants, be imprisoned or bailed, as the case may be.

<u>s/Robert Brown, by the Court, w/permission</u>
ROBERT BROWN
Postal Inspector
United States Postal Inspection Service

Sworn to before me through the transmission of this Affidavit by reliable electronic means, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal procedure, this
25th day of August, 2020

_____
THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

8